UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYER AMSCHEL ROTHSCHILD,<br>Plaintiff,<br>v.<br>THE PACIFIC COMPANIES,<br>Defendant. | Case No. 23-cv-01721-LJC<br><br>**ORDER ON MOTION TO DISMISS AND ADMINISTRATIVE MOTION**<br><br>Re: Dkt. Nos. 55, 70 |

**I.      INTRODUCTION**

Plaintiff Mayer Amschel Rothschild, pro se, brings this action against Defendant The Pacific Companies (TPC), a privately held group of real estate firms, alleging breach of contract, fraud, civil conspiracy, nuisance, personal injury, and tortious interference with business expectancy. TPC moves to dismiss Plaintiff's Third Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 55 (Motion to Dismiss).

The Court held a hearing on the Motion to Dismiss. ECF No. 71. Plaintiff subsequently filed an Administrative Motion requesting that the Court accept late-filed sur-replies. ECF No. 70. Having considered the papers submitted by the parties and the oral arguments presented, for the reasons discussed below, Plaintiff's Motion to Dismiss is GRANTED in part and DENIED in part. Defendant's Administrative Motion is GRANTED in part and DENIED in part. If Plaintiff intends to pursue any of the claims dismissed without prejudice by this Order, he may file a fourth amended complaint no later than March 25, 2025.

## II.   BACKGROUND

### A.   Third Amended Complaint[1]

For approximately ten years, Plaintiff[2] lived with Stephanie Gildred, then his fiancé, in a multi-family, residential apartment complex at 128 Lorton Avenue, Burlingame, California. ECF Nos. 24 at 4[3] (Third Amended Complaint) (TAC), 57-1 ¶ 11.  Although Plaintiff alleges that Gildred owned the apartment building, *see* TAC at 4, TPC filed a copy of a grant deed demonstrating that, as of 2012, Lorton Management Corporation (Lorton Management) owned the property.  ECF No. 55-1 at 43-45 (Grant Deed).  In 2019, while Plaintiff was living at 128 Lorton with Gildred, TPC began constructing a five-story parking garage next door.  *See* TAC at 4.  During TPC's construction of the parking garage, TPC created excessive noise, odors, vibrations and pollution which caused Plaintiff significant mental and physical anguish.  *See id*. at 4, 12.

TPC then approached Plaintiff and Ms. Gildred with a business proposal to develop the apartment complex at 128 Lorton into a five-story condominium development.  *Id*. at 4.  Despite the alleged nuisance caused by TPC's construction at the adjacent parking garage, Plaintiff and Gildred engaged with TPC's proposal.  TPC sent Plaintiff and Gildred a term sheet that outlined the terms of a potential deal.  *Id*.  Plaintiff then "worked hand in hand" with TPC to "gain approval, talk to architects," and conduct "color selection, surveys and studies all necessary to develop the property."  *Id*.  TPC obtained approval for the building plan from the City of Burlingame.  *Id*.

Plaintiff alleges that Gildred then decided to withdraw from the redevelopment project and sell 128 Lorton building.  *Id*.  He further alleges that TPC gave the construction plans for

---

[1] Because a plaintiff's factual allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this section summarizes Plaintiff's allegations as if true, except where the Court notes a contradiction in the record.

[2] In various filings, Plaintiff refers to himself as Thomas E. Rothschild, Mayer A. Rothschild, and Tom Cady.  *See* TAC at 1; ECF Nos. 57-1 ¶ 11; 69 ¶ 49.  For the purposes of ruling on this motion, the Court assumes that these names refer to the same person.

[3] Unless otherwise noted, this Order refers to page numbers as assigned by the Court's ECF filing system.

128 Lorton, worth $1,000,000, to Ms. Gildred as an incentive to not develop the property. *Id*. at 7. These actions by TPC and Ms. Gildred, as well as the nuisance caused by TPC's construction of the parking garage, form the basis of Plaintiff's lawsuit.

### B.     Procedural History

Plaintiff brought this action in forma pauperis (IFP) against TPC on April 10, 2023. ECF No. 1. He then brought a second IFP action against Ms. Gildred and Ms. Gildred's property management company, Lorton Management, on April 17, 2023, with respect to the same facts. *See Rothschild v. Gildred*, No. 23-cv-02105 (N.D. Cal. Apr. 17, 2023), ECF No. 1.

The Court screened Plaintiff's Complaint against TPC pursuant to 20 U.S.C. § 1915 (e)(2)(B), finding that it did not sufficiently allege a basis for subject matter jurisdiction, and Mr. Rothschild was granted leave to amend. ECF No. 16. Plaintiff filed a First Amended Complaint and then a Second Amended Complaint (SAC). ECF Nos. 18, 22. The Court screened the SAC pursuant to 20 U.S.C. § 1915 (e)(2)(B) and found that it failed to show that the Court had subject matter jurisdiction over the matter. ECF No. 23. Mr. Rothschild was granted leave to amend. *Id*. On September 29, 2023, Mr. Rothschild filed the Third Amendment Complaint (TAC), which is the operative complaint here.

The TAC alleges fraud, civil conspiracy, tortious interference with business expectancy, breach of contract, nuisance, and personal injury. TAC at 1. On February 14, 2024, the Court allowed the TAC to proceed and directed the U.S. Marshal to effectuate service on TPC. ECF No. 38. TPC filed the present Motion to Dismiss on May 24, 2024, claiming that Plaintiff failed to state a cause of action. ECF No. 55 at 5.

Plaintiff timely filed an opposition to TPC's Motion to Dismiss. ECF No. 57. He then filed a sur-reply[4] the day before the hearing on the Motion to Dismiss and a second sur-reply on the morning of the hearing. ECF Nos. 68-69. Plaintiff did not obtain permission from the Court before filing the sur-replies. *See id*. After the hearing, Plaintiff filed an Administrative Motion

---

[4] While Plaintiff has labelled these filings "Oppositions," he filed them in response to TPC's Reply, ECF No. 61, and the Court will accordingly refer to ECF Nos. 68 and 69 as sur-replies.

3

requesting that the Court accept his late filings and that he be permitted to file a fourth amended complaint. ECF No. 70. Although his Administrative Motion was filed in *Rothschild v. TPC*, the caption of the motion refers to Plaintiff's case against Ms. Gildred and Lorton Management and the motion itself requests relief in both of Plaintiff's cases in front of the Court. *Id*. at 6.

### III.     12(B)(6) LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation and internal quotation marks omitted). A complaint generally must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A court reviewing a 12(b)(6) motion must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). "Threadbare recitals of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal conclusions" or "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When the complaint has been filed by a pro se plaintiff, a court must "construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

A court's review under Rule 12(b)(6) is generally limited to the contents of a complaint, with the exception of materials incorporated by reference in a complaint or materials subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). A court should not consider facts first alleged in a plaintiff's opposition papers, although such new

facts may be considered when deciding whether to dismiss with or without prejudice. *See Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001).

A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6) unless it is clear the complaint cannot be saved by amendment. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "[L]eave to amend 'shall be freely given when justice so requires.'" *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting Fed. R. Civ. P. 15(a)). Generally, leave to amend may be denied only if allowing the amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith. *Id.* "[T]he rule favoring liberality in amendments to pleadings is particularly important for" for pro se litigants, as they are "[p]resumably unskilled in the law [and] far more prone to making errors in pleading than the person who benefits from the representation of counsel." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

**IV.   ANALYSIS**

    **A.   Administrative Motion**

After the hearing on the motion to dismiss, Plaintiff filed an administrative motion requesting that the court accept his late-filed sur-replies and requesting leave to file a fourth amended complaint. ECF No. 70.

Once a reply has been filed, Local Rule 7-3(d) requires that a party that wishes to file any additional materials, with narrow exceptions, must first obtain court approval. Civ. L. R. 7-3(d). Plaintiff, in filing his sur-replies before requesting leave of the court, did not follow the applicable local rule. However, given Plaintiff's status as a pro se litigant and the limited consideration the Court can give facts first alleged in the sur-replies, the Court accepts the sur-replies and considers them only in determining whether to permit Plaintiff to further amend his complaint. *See Wescott v. Stephens*, No. 17-cv-05837, 2018 WL 1730327, at *1 n.2 (N.D. Cal. Apr. 10, 2018). As the instant Order permits Plaintiff to further amend certain claims of his complaint, Plaintiff's request for leave to file a Fourth Amended Complaint in his Administrative Motion is denied as moot. Plaintiff's administrative motion is GRANTED regarding his sur-

replies and DENIED as moot regarding his request to file a fourth amended complaint.

### B. TPC's Requests for Judicial Notice

A court's review under Rule 12(b)(6) is generally limited to the contents of a complaint, except for materials incorporated by reference in a complaint or materials subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Under Rule 201(c) of the Federal Rules of Evidence, the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). In *Khoja*, the Ninth Circuit held that "[j]udicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)). "A fact is not subject to reasonable dispute if it is generally known, or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* (quotations omitted). "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 688, 689 (9th Cir. 2001) (quotations omitted).

TPC submits four exhibits in support of its Motion to Dismiss and requests that the Court take judicial notice of them. ECF No. 55 at 3, n.2; ECF No. 55-1. These four documents are addressed below in turn.

#### 1. Arizona Superior Court Filings

Exhibit 1 to the Motion to Dismiss consists of copies of the complaint and a motion to dismiss from a civil action in Arizona Superior Court filed by Plaintiff, then going by Thomas A. Cady, against Ms. Gildred, the City of Burlingame, Clarum Homes, and Clarium Company. ECF No. 55-1 at 1–23. As Rule 201 permits the Court to take judicial notice of papers filed in other courts, including state court proceedings, the Court takes judicial notice of Exhibit 1 of the Motion to Dismiss. Although the Court takes judicial notice of the fact that these documents exist, it does not take judicial notice of "the truth of the facts recited therein." *Lee*, 250 F.3d at 690 (quotations omitted).

### 2. Idaho Secretary of State Screenshot

Exhibit 2 to TPC's Motion to Dismiss consists of screenshots from the Idaho Secretary of State Business Search website showing that searching for "the pacific companies" yields no results. ECF Nos. 55-1 at 24-26; 72 ¶¶ 3-4 (providing the website address). Courts may take judicial notice of information, "[p]ublic records[,] and government documents available from reliable sources on the Internet, such as websites run by governmental agencies," including results retrieved from a state's Secretary of State business search website. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033-34 (C.D. Cal. 2015) (quotations and citation omitted). As in *Gerritsen*, where the Central District took judicial notice of business entity profiles on the California Secretary of State's website, the Court takes judicial notice of the fact that a search for "the pacific companies" on the Idaho's Secretary of State Business Search website yields no results. ECF No. 55-1 at 24–26.

### 3. City of Burlingame

Exhibit 3 is a copy of an Application for Design Review and Lot Merger for a New Five-Level Parking Garage (Application) submitted by TPC to the City of Burlingame and available to the public on the City of Burlingame's website. ECF Nos. 55-1 at 27-42; 72 ¶ 3. As this Application is a public record made available from a government entity, the Court takes judicial notice of the Application. *See Lee v. City of Los Angeles*, 250 F.3d 688, 689 (9th Cir. 2001).

### 4. County of San Mateo Deed

TPC requests that the Court take judicial notice of Exhibit 4, a notarized Grant Deed from the County of San Mateo transferring ownership of the property at 128 Lorton from Emcee Investment Co., Inc. to Lorton Management Group in July 2012. ECF No. 55-1 at 43–45. The Court takes judicial notice of the grant deed. *See Hotel Emps. and Restaurant Emps. Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005) (finding that grant deeds are "widely held proper subjects of judicial notice").

## C. Term Sheet

In addition to the four exhibits discussed above, TPC attached a Joint-Venture Term

1  Sheet for the Redevelopment of 128 Lorton Avenue (Term Sheet) to their Motion to Dismiss,

2  which it purports to be the contract at issue in this case. ECF Nos. 55-1 at 47-48; 72 ¶ 2. As the

3  Term Sheet is incorporated by reference to Plaintiff's TAC, the Court will consider it in deciding

4  TPC's Motion to Dismiss.

5        Generally, a court may not look beyond the pleadings while deciding a motion to dismiss.

6  *See Lee*, 250 F.3d at 688. There are two exceptions. A court may consider material that it can

7  take judicial notice of and "material which is properly submitted as part of the complaint." *Id.*

8  (quotations omitted). The first exception is discussed above. The second exception—material

9  that is submitted as part of the complaint—includes both documents that are attached to the

10 complaint and those that, while not literally submitted with the complaint, are incorporated in the

11 complaint "by reference." *Gerritsen*, 112 F. Supp. 3d at 1020. Documents incorporated by

12 reference are those that the complaint "necessarily relies' on" and may be considered if their

13 "authenticity […] is not contested." *Lee*, 250 F.3d at 688 (quotations omitted).

14       Plaintiff's breach of contract claim against TPC is based entirely on the term sheet, which

15 he alleges formed the basis of the agreement between TPC, Plaintiff and Ms. Gildred. TAC at 4,

16 10 ("[T]he contract was the terms sheet executed between the parties."; "Pacific Companies,

17 Caleb Roope CEO drafted a terms sheet which was a working contract that Gildred and Plaintiff

18 signed and executed."). Although Plaintiff did not submit a copy of the referenced term sheet as

19 part of the TAC, his claims necessarily rely on the term sheet, making it appropriate for the

20 Court to consider in deciding this Motion if its authenticity is not disputed. *See Marder v. Lopez,*

21 F.3d 445, 448 (9th Cir. 2006).

22       At issue, then, is whether the Term Sheet submitted as Exhibit 5 to TPC's Motion to

23 Dismiss is an authentic copy of Plaintiff's referenced term sheet. While Plaintiff refers to a term

24 sheet that he and Ms. Gildred "signed and executed" and TPC's Exhibit 5 is not signed, Plaintiff

25 does not challenge the authenticity of the Term Sheet. TAC at 10; ECF No. 55-1 at 47-49. In

26 his Opposition to TPC's Motion to Dismiss, filed after TPC submitted Exhibit 5, Plaintiff

27 references the "terms sheet" and "this Joint Venture Agreement" that formed the basis of his

28

1   alleged contract with TPC.  ECF No. 57-1 at 3, 5; *see* ECF No. 57 at 3, 6, 11.  Moreover, at the

2   hearing on this Motion, Plaintiff acknowledged that TPC's Exhibit 5 was the correct term sheet

3   and had not been altered.  Accordingly, as the authenticity of the Term Sheet is not contested, the

4   Court will consider it in deciding this Motion to Dismiss.

5         **D.**      **TPC Has Not Established that it is Not a Legal Entity that Can be Sued**

6         TPC argues that the TAC must be dismissed because "The Pacific Companies" is a trade

7   name referring to several parent companies and not itself legal entity that can be sued.  ECF No.

8   55 at 3.  It points to prior cases brought by Plaintiff in Arizona Superior Court against, among

9   other named defendants, "Pacific Companies," as well search results from Idaho's Secretary of

10  State Business Search website showing that a search for "the pacific companies" yielded no

11  results.  ECF No. 55-1 at 2-23, 25-26; *see* ECF No. 72 ¶ 4.  Plaintiff alleges that TPC is a

12  "privately-held group of firms" "incorporated … and headquartered" in the state of Idaho.  TAC

13  at 2.

14        That "Pacific Companies" previously argued it is not a legal entity in a different lawsuit

15  brought by Plaintiff is not dispositive here.  Moreover, "the absence of a record with the

16  Secretary of State…does not necessarily establish" that TPC is a "non-existent entity."  *Sanchez*

17  *v. Inland-Temple Corp.*, No. CV 09-6987, 2009 WL 10675627, at *2 (C.D. Cal. Dec. 17, 2009)

18  (noting that the defendant corporation could be "an unregistered entity" or "registered under a

19  different name," and therefore the lack of a record with the Secretary of State did not mean that

20  the non-existence of the corporation had been "conclusively established").

21        TPC and Plaintiff appear to have "competing theories" about TPC's status as a business

22  entity.  *Meyer v. Mittal*, No. 21-cv-00621, 2021 WL 5397472, at *3 (D. Or. Nov. 16, 2021)

23  (quoting *Khoja*, 899 F.3d at 998).  This factual disagreement is not appropriate to resolve at the

24  motion to dismiss stage.  *See id.*

25        **E.**      **Analysis of Claims**

26             **1.**      **Breach of Contract**

27  To state a breach of contract claim under California law, the plaintiff must allege "(1) the

28

1    existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

2    breach, and (4) damages to plaintiff as a result of the breach." *Moss v. Auto. Warranty Servs.*

3    *Inc.*, No. 17-cv-00115, 2017 WL 11827867, at *2 (N.D. Cal. Nov. 13, 2017).  Plaintiff does not

4    allege the existence of a valid contract, and therefore the Motion to Dismiss is granted as to this

5    cause of action.

6         An enforceable contract requires consideration and mutual consent.  *See* Cal. Civ. Code

7    § 1550.  As mutual consent requires the contracting parties to "agree upon the same thing in the

8    same sense," a contract must be "sufficiently definite" to be enforced.  *Id*. at § 1580; *Bustamante*

9    *v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006) (quotations omitted).  Whether a contract is

10   sufficiently definite to be enforceable is a question of law.  *Bustamante*, 142 Cal. App. 4th at

11   209.  Although parties contemplating a contract may conduct initial negotiations, these

12   negotiations only become binding when the essential terms are understood and agreed upon.  *See*

13   *id.*  "Under California law, a document which by its express language outlines a future

14   agreement between parties is not considered a binding contract."  *SHK Mgmt., Inc. v. Kilroy*

15   *Realty Corp.*, No. CV 14-02509, 2014 WL 12561096, at *4 (C.D. Cal. Oct. 2, 2014); *see 1440*

16   *Sports Management Limited v. PGA Tour, Inc.*, No. 22-cv-02774, 2023 WL 7280444, at *14

17   (N.D. Cal. Oct. 6, 2023).  "[W]here any of the essential elements of a promise are reserved for

18   the future agreement of both parties, no legal obligation arises until such future agreement is

19   made."  *Gold Flora, LLC v. Constellation Newenergy, Inc.*, No. 22-cv-02088, 2023 WL

20   3149275, at *3 (C.D. Cal. Mar. 14, 2023) (quotations omitted).  Evaluating the existence of "a

21   valid contract is suitable on a motion to dismiss because the Court looks to the objective intent as

22   evidenced by the words of the instrument, not the parties' subjective intent."  *SHK Mgmt., Inc.*,

23   2014 WL 12561096, at *4 (quotations omitted).

24        Plaintiff alleges that the Term Sheet drafted by Caleb Roope, CEO of TPC, was a valid

25   and enforceable contract between Plaintiff, then going by Tom Cady, Ms. Gildred, and TPC.

26   TAC at 2, 4; ECF No. 55-1 at 47-48.  TPC disagrees, arguing that the Term Sheet is "nothing

27   more than a letter outlining a hypothetical deal[.]"  ECF No. 55 at 6.  TPC argues that the Term

28

Sheet is not binding contract because it is unsigned and indefinite. *Id.*

Although contracts do not need to be signed to be enforceable, the fact that the Term Sheet is unsigned and does not even include signature blocks indicates that TPC did not intend for the Term Sheet to be a binding contract. *See Empros Capital LLC v. Rosenbach*, 20-cv-06788, 2020 WL 6684854, at *5 (N.D. Cal. Nov. 12, 2020) ("Parties can intend—as objectively understood through their words and acts—that a contract be binding only upon formal execution, or they can intent that formal execution is not required to be bound.").

Moreover, the Term Sheet contains multiple open-ended and undefined terms, which further supports TPC's argument that there was no binding contract. *See* ECF No. 55-1 at 47-49; *1440 Sports Management*, 2023 WL 7280444, at *13-14 ("Under California law, there is no contract until there has been a meeting of the minds on *all* material points […] an agreement for future negotiations is not considered a contract.") (quotations omitted). As TPC points out, the Term Sheet contemplates that the redevelopment project may not actually happen, and if it "does not proceed, [Lorton Management] shall retain the Site that the parties shall share any predevelopment losses." ECF No. 55-1 at 48. The Term Sheet, as written, does not specify the source or type of loan to fund the "*Proposed* Project," instead stating that "TPC will source a construction loan from a local or regional bank. Such loan will *likely* be recourse and require guarantees." ECF No. 55-1 at 47-49 (emphasis added). Division of ownership interests were not finalized, as the Term Sheet states that ownership interest will be split "50/50 between TPC and LMC entities; owners participate in economics consistent with partnership interest, *unless modified herein*." *Id.* (emphasis added). The Term Sheet describes that the architect for the project will be "Architects Orange *or another architect* suitable to TPC and LMC," and that the civil engineer or surveyor will be "Bellecci and Associates *or another engineer / surveyor* suitable to TPC and LMC." *Id*. (emphasis added). Given these "open-ended provisions" regarding material terms of the proposed development, the Court determines that the Term Sheet

11

is not a binding contract. *Id.*[5]

Accordingly, TPC's Motion to Dismiss is GRANTED as to Plaintiff's breach of contract claim based on the terms sheet. This claim is dismissed with prejudice.

### 2. Fraud

The elements of fraud in California are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (emphasis removed). In contrast to the general requirement that a plaintiff need only include a "short and plain statement of the claim showing that the pleader is entitled to relief" in their complaint, a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 8(a)(2), 9(b). *Kearns* defines the "particularity" requirement under Rule 9(b) as "the who, what, when, where, and how of the misconduct charged." 567 F.3d at 1124 (quotations omitted).

Plaintiff fails to plead his fraud claim with particularity. He alleges that TPC "made false statements, in the form of spoken or written words, representations and actions, that were meant to deceive" him, but does not specify what the false statements were, who made them, or when they were made. TAC at 8. Plaintiff claims that "he relied on the false statement or misrepresentations to his detriment," but does not, in the TAC, explain how or when he relied on the alleged false statements. *Id.* at 7. Although the Court finds that Plaintiff did adequately allege damages, which need not be alleged with the same level of specificity required for other elements of a fraud claim, this does not cure the deficiencies described above. *Id.*; *Ward v. Nat'l Ent. Collectibles Ass'n, Inc.*, No. CV1106358, 2012 WL 12885073, at *6 (C.D. Cal. Oct. 29, 2012).

---

[5] As the Court determined that there was no binding contract between Plaintiff and TPC, it need not reach the other elements of Plaintiff's breach of contract claim. It does note that, even if Plaintiff had alleged that there was a valid contract between him and TPC to develop the property, Plaintiff failed to allege that TPC breached such an agreement as he claims that it was Gildred, not TPC, who "decided not to develop the property" and ultimately sold the property. TAC at 4.

As Plaintiff has failed to plead fraud with the particularity required by Rule 9(b), TPC's Motion to Dismiss is GRANTED as to this claim. Although Plaintiff provided additional facts supporting his fraud claim in his Opposition to the Motion to Dismiss and Sur-Replies, in ruling on this Motion to Dismiss, the Court is limited to considering facts properly alleged in the TAC. *See Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1137 (9th Cir. 2001); ECF Nos. 57 at 9, 68 at 8. As it may be possible for Plaintiff to amend his complaint to state a claim for fraud, the fraud claim is dismissed without prejudice.

### 3. Tortious Interference with Business Expectancy

The elements of tortious interference with business expectancy are "1) an economic relationship between plaintiff and a third party, 2) knowledge by the defendant of the existence of that relationship, 3) intentional acts on the part of the defendant designed to disrupt the relationship, 4) actual disruption of the relationship, and 5) damages proximately caused by this conduct." *Trans World Airlines, Inc. v. Am. Coupon Exch.*, *Inc.*, 682 F. Supp. 1476, 1482–83 (C.D. Cal. 1988) (overruled in part on other grounds by *TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676 (9th Cir. 1990)). Tortious interference with business expectancy "occurs when a third party intentionally interferes with [a plaintiff's] economic interest, causing harm or disruption." TAC at 8; *see Trans World Airlines*, 682 F. Supp. at 1483. Here, Plaintiff brings his tortious interference with business expectancy claim against TPC, who is one of the parties to the alleged business relationship. TAC at 8. To bring a claim for tortious interference with business expectancy, the defendant must be a third party that interfered with the business relationship, not a party to the business relationship themselves. As TPC is not a third party but rather the party involved in the business relationship at issue, the Court GRANTS Defendant's Motion to Dismiss as to Plaintiff's tortious interference with business expectancy claim. This claim is denied with prejudice.

### 4. Civil Conspiracy

To state a cause of action for civil conspiracy, "the complaint must allege (1) the formation and operation of a conspiracy; (2) the wrongful act or acts done pursuant thereto; and

(3) the damage resulting from such act or acts." *Gen. Am. Life Ins. Co. v. Rana*, 769 F. Supp. 1121, 1125 (N.D. Cal. 1991). Here, Plaintiff alleges that "[t]he defendant(s) involved in the conspiracy intended to carry out the act that is wrongful. These included, fraud, theft, defamation, interference with contractual relations, or other tortious acts." TAC at 6.

Properly pleading civil conspiracy is predicated on properly pleading the underlying "wrongful" tort done to the plaintiff. *Gen. Am. Life Ins. Co.*, 769 F. Supp., at 1125 ("To establish the 'wrongful act' element of civil conspiracy, defendant must satisfy all of the elements of a cause of action for some *other* tort or wrong."). Here, Plaintiff alleges that there are at least four underlying torts as the basis of his civil conspiracy claim: fraud, theft, defamation, and interference with contractual obligations. TAC at 6. However, the only torts that Plaintiff alleges with any substance are fraud and "interference with contractual obligations," which the Court understands to mean the tortious interference with business expectancy claim. *Id*.

As explained above, Plaintiff does not allege a valid tortious interference with business expectancy claim or a valid fraud claim. Because he has not pled a valid underlying tort claim, his civil conspiracy claim must thus fail and the Motion to Dismiss is GRANTED. This claim is denied with prejudice as to the business expectancy claim and denied without prejudice as to the fraud claim.

### 5. Nuisance[6]

California law, in pertinent part, defines a nuisance as "[a]nything which is injurious to

---

[6] While Plaintiff alludes to a negligence cause of action in the discussion of his nuisance claims, he has not alleged what duty of care TPC had towards him or how TPC may have breached that duty. TAC at 11. Accordingly, the Court determines that Plaintiff's conclusory assertion that he "suffered personal injury - physical and emotional harm suffered due to the negligence" is not enough to raise a negligence or other personal injury claim that the Court must consider here. *Id.*; *see Spice Jazz LLC v. Youngevity Int'l, Inc.,* No. 19-cv-583, 2019 WL 4573705, at *2 (S.D. Cal. Sept. 19, 2019) ("Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that '[the plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the ... laws in ways that have not been alleged.'") (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

14

1    health… or is indecent or offensive to the senses, or an obstruction to the free use of property, so
2    as to interfere with the comfortable enjoyment of life or property[.]" Cal. Civ. Code § 3479.
3    Plaintiff claims that before TPC approached him and Gildred about partnering to redevelop the
4    128 Lorton property, TPC constructed a five-story parking garage at the adjacent lot. TAC at
5    11–12. Plaintiff alleges that the construction created significant noise, odors, and pollution, and
6    brings both private and public nuisance claims against TPC based on the disturbance caused by
7    the construction. *Id*.

### a.     Private Nuisance

To state a claim for private nuisance, a plaintiff must allege that there was 1) an interference with the use and enjoyment of property they had a possessory interest in; (2) the interference caused the plaintiff substantial actual damage; and (3) the interference was "of such a nature, duration, or amount" as to have been unreasonable. *Gjovik v. Apple Inc.*, No. 23-cv-04597, 2024 WL 2309100, at *15 (N.D. Cal. May 20, 2024) (quoting *Mendez v. Rancho Valencia Resort Partners, LLC*, 3 Cal. App. 5th 248, 262-63 (2016)).

Plaintiff alleges that TPC's "development of the adjacent property in to a 5 story parking garage caused substantial and unreasonable interference" with his use and enjoyment of his home at 128 Lorton. TAC at 11. The nuisance included "cranes operating overhead […] causing a danger of dropping large overhead materials," "[g]round shaking the earth nearby that literally vibrated the dishes out of the cabinet," "[l]arge Scale dust and debris blowing that caused [his] breathing problems," "[d]isruption of utility lines cut," "[l]ack of access to remove [Plaintiff's] work trucks," the "combative relationship" between TPC and Plaintiff, and TPC "[t]earing down a fence that separated the property and the next door project that disrupted" Plaintiff's use and enjoyment of the back yard and caused Plaintiff stress, COPD, breathing difficulties, migraines, and other ailments. *Id*. at 11-13.

TPC argues that Plaintiff "cannot rely on a construction condition suffered by the surrounding neighbors to bring a claim for private nuisance since those are considered public nuisances," citing to *Koll-Irvine Ctr. Prop. Owners Assn. v. County of Orange*, 24 Cal. App. 4th

1036, 1040–41 (1994); ECF No. 55 at 10.  However, in *Koll-Irvine*, the court specifically noted that a "nuisance may be both public and private." 24 Cal. App. 4th at 1041.  "[T]o proceed on a private nuisance theory, the plaintiff must prove an injury specifically referable to the use and enjoyment of his or her land." *Id.*  The plaintiff does need to allege that the inference directly damaged the land or prevented their use of the land, because, as "long as the interference is substantial and unreasonable […] virtually any disturbance of the enjoyment of the property may amount to a nuisance." *Id.* (citations omitted).  Here, Plaintiff alleges that TPC's construction activities interfered with his use and enjoyment of the property where he lived.  TAC at 11-12.  The fact that he also alleges public nuisance does not invalidate this claim.

TPC next argues that "California has explicitly held that conditions such as dust, noise, and vibrations are not actionable when it arises from a public improvement" and that the parking garage development was "a public project."  ECF No. 55 at 11.  TPC cites to *Lombardy v. Peter Kiewit Sons' Co.*, 266 Cal. App. 2d 599, 603 (1968), where the court, quoting *Bacich v. Board of Control (of State of California)*, 23 Cal. 2d 343, 144 (1943), explained that "[w]hen a public improvement is made on property adjoining that of one who claims to be damaged by such general factors as change of neighborhood, noise, dust, change of view, diminished access and other factors […] there can be no recovery where there has been no actual taking or severance of the claimant's property."  California Civil Code section 3482 states "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance."  Although "statute" has been "broadly interpreted to include regulations and other express government approvals," section 3482 does not prohibit claimants from filing nuisance claims based on the manner in which the statute-authorized activities are performed.  *3500 Sepulveda, LLC v. Macy's West Stores*, 980 F.3d 1317, 1325 (9th Cir. 2020) ("While it is true that "although an activity authorized by statute cannot be a nuisance, the [m]anner in which the activity is performed may constitute a nuisance.") (citations omitted).

As the Court has taken judicial notice of the City of Burlingame's project approval for the parking garage (ECF No. 55-1 at 29-42), the Court accepts that the City of Burlingame

16

owned the parking garage property in 2018 and approved TPC to develop it. Plaintiff does not dispute this. But Plaintiff's allegations of nuisance appear to be not just based on the fact that TPC built a garage on a city-owned property or that the City of Burlingame approved plans for the construction, but rather the offensive "manner" that TPC employed while constructing the parking garage. *3500 Sepulveda, LLC,* 980 F.3d at 1325; see TAC at 11-12 (alleging that the construction caused "excessive noise," shook the ground so severely it broke dishes, and that TPC and its contractors had a confrontational and "combative" relationship with Plaintiff). Plaintiff's private nuisance claim accordingly is not barred for these grounds.

Plaintiff alleges that TPC's construction created offensive and unreasonable "noise, odors, vibrations [and] pollution" that disrupted his peaceful use of his property and caused him substantial harm. TAC at 11-12. The Court finds that Plaintiff has alleged sufficient facts to state a cause of action as to his private nuisance claim. The Motion to Dismiss as to this claim is DENIED.

### b. Public Nuisance

A public nuisance is defined as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. Ordinarily, "[a] private person may maintain an action for public nuisance if it is specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493; see *Institoris v. City of Los Angeles*, 210 Cal. App. 3d 10, 20 (1989) (noting that a plaintiff suing on the basis of public nuisance "must show special injury to himself of a character different in *kind*—not merely in degree—from that suffered by the general public"). But if the nuisance alleged "is a private as well as a public one, there is no requirement that the plaintiff suffer damage different in kind from that suffered by the general public and he does not lose his rights […] merely because others suffer damage of the same kind, or even of the same degree[.]" *Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 124 (1971) (quotations omitted); see *Kahn v. Price*, 69 Cal. App. 5th 223, 266 n.14 (2021).

TPC's only argument as to the public nuisance claim is that Plaintiff does not have

17

1  standing to bring such a claim, as he has not shown how the construction was "specially
2  injurious" to him. *Id.*, ECF No. 55 at 9 (quoting Cal. Civ. Code § 3493). TPC relies on
3  *Instioris*, which held that a plaintiff suing on the basis of public nuisance "must show special
4  injury to himself of a character different in *kind*—not merely in degree—from that suffered by
5  the general public." 210 Cal. App. 3d at 20. According to TPC, "[d]ust, traffic interruption,
6  disruption of utility lines, and vibrations from an adjacent construction project are all public
7  nuisances since those conditions are experienced by all surrounding properties and people, not
8  just Plaintiff, who lived in a multi-tenant complex." ECF No. 55 at 10. But Plaintiff alleges that
9  TPC's construction caused both a private and public nuisance, and thus the "special injury
10 requirement" does not apply. *Birke v. Oakwood Worldwide,* 169 Cal. App. 4th 1540, 1551
11 (2009); *see Venuto*, 22 Cal. App. 3d at 124.

12     Although Plaintiff does not need to allege that TPC's construction was "specially
13 injurious" to him, to state a cause of action for public nuisance he must allege that the nuisance
14 conduct "affected a substantial number of people at the same time." *Birke,* 169 Cal. App. 4th at
15 1548. Plaintiff does not claim that TPC's alleged nuisance behavior harmed the public. Rather,
16 much of the behavior he references impacted him specifically. *See* TAC at 12 (alleging that TPC
17 operated cranes over Plaintiff's dwelling, cut utility lines at Plaintiff's property, tore down a
18 fence between the construction site and Plaintiff's property, blocked Plaintiff's access to work
19 trucks so he could not "perform duties of [his] business," and had a combative and
20 confrontational relationship with Plaintiff, and this behavior caused Plaintiff's headaches,
21 breathing difficulty, and depression). As Plaintiff's TAC does not allege that TPC's actions
22 affected "at the same time an entire community or neighborhood, or any considerable number of
23 persons," TPC's Motion to Dismiss is GRANTED as to Plaintiff's public nuisance claim, and
24 this claim is dismissed without prejudice. *Birke*, 169 Cal. App. 4th at 1548.

25     Accordingly, TPC's Motion to Dismiss is DENIED in part and GRANTED in part as to
26 Plaintiff's private and public nuisance claims, respectively.

### 6. Punitive Damages

The TAC contains a final cause of action for "punitive damages" against TPC. TAC at 13. However, "[i]n California, there is no separate cause of action for punitive damages. A plaintiff must still prove the underlying tortious act[.]" *McLaughlin v. Nat'l Union Fire Ins. Co.*, 23 Cal. App. 4th 1132, 1141 (1994). Therefore, the Motion to Dismiss is GRANTED as to any standalone "punitive damages" cause of action.

## V. CONCLUSION

For the foregoing reasons, TPC's Motion to Dismiss is DENIED in part and GRANTED in part. It is DENIED with respect to Plaintiff's private nuisance claim. It is GRANTED with respect to Plaintiff's breach of contract claim based on the Term Sheet, tortious interference with business expectancy claim, fraud claim, civil conspiracy claim, public nuisance claim, and standalone punitive damages claim. Plaintiff's claims for public nuisance, fraud, and civil conspiracy are dismissed without prejudice to give Plaintiff an additional opportunity to allege facts sufficient to state a cause of action under these three specific theories of liability. Plaintiff's fourth amended complaint, if he chooses to file one, must be filed by March 25, 2025.

Plaintiff's Administrative Motion is DENIED as moot with respect to his request to File a Fourth Amended Complaint and GRANTED with respect to his request for the Court to consider his late-filed sur-replies.

**IT IS SO ORDERED.**

Dated: March 4, 2025

LISA J. CISNEROS
United States Magistrate Judge